## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **Valtrus Innovations Ltd.** | § | **C.A. NO. 2:24-cv-00361-JRG-RSP** |
| **Plaintiff,** | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| **NTT Data Services, LLC et al** | § | |
| **Defendant.** | § | **LEAD CASE** |
| **Vertiv Corporation,** | § | **C.A NO. 2:24-cv-00907-JRG-RSP** |
| **Plaintiff,** | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| **Valtrus Innovations Ltd.,** | § | |
| **Defendant.** | § | |
| **Valtrus Innovations Ltd. and** | § | **C.A NO. 2:24-cv-00907-JRG-RSP** |
| **Key Patent Innovations Ltd.,** | § | |
| **Counterclaim-Plaintiffs,** | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| **Vertiv Corporation;** | § | |
| **11:11 Systems, Inc.;** | § | |
| **FifteenFortySeven Critical Systems** | § | |
| **Realty, LLC;** | § | |
| **365 Data Centers Holdings, LLC;** | § | |
| **CDW Corporation;** | § | |
| **Cogent Communications Holdings, Inc.;** | § | |
| **Cologix, Inc.;** | § | |
| **Compass Datacenters, LLC;** | § | |
| **Equinix, Inc.;** | § | |
| **EvoDC, LLC;** | § | |
| **FDC Servers.net, LLC;** | § | |
| **H5 Colo, Inc.;** | § | |
| **H5 Data Centers LLC;** | § | |
| **Iron Mountain Incorporated;** | § | |
| **Lumen Technologies, Inc.;** | § | |
| **McAllen Data Center, LLC;** | § | |
| **Netrality Properties, LP;** | § | |
| **NTT Global Data Centers Americas, Inc.;** | § | |
| **Prime Data Centers, LLC;** | § | |
| **Quasar Data Center, Ltd.;** | § | |
| **Sabey Corporation;** | § | |
| **Serverfarm, LLC;** | § | |
| **Strasmore, Inc.;** | § | |
| **T5 Data Centers, LLC;** | § | |
| **TRG Datacenters, LLC; and** | § | |
| **DOES 1-200;** | § | |
| **Counterclaim-Defendants.** | § | |

**ANSWER AND COUNTERCLAIMS TO VERTIV CORPORATION'S
<u>SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT</u>**

Defendant Valtrus Innovations Limited ("Valtrus") and Counterclaim-Plaintiffs Valtrus Innovations Limited and Key Patent Innovations Limited ("KPI"), by and through their undersigned counsel, respond to Vertiv Corporation's Second Amended Complaint (Dkt. 124, "the Complaint") as follows.

Each numbered paragraph below responds to the same numbered paragraph in the Complaint. Valtrus also incorporates the headings in Vertiv's Complaint for ease of reference, but denies any factual allegations contained within the headings. Any allegation Valtrus does not expressly admit is denied.

## <u>NATURE OF THE ACTION</u>

1.      Admitted that Vertiv is seeking declaratory judgment relief as to the Patents-in-Suit and that such assertions are subject to the identified statutory provisions. Admitted that Vertiv's products infringe. Otherwise denied.

2.      Denied.

3.      Denied.

4.      Admitted that Vertiv seeks a declaration resolving whether Vertiv's products are used by its customers to infringe Valtrus' patents. Denied that Valtrus and Vertiv are the only real parties in interest. Otherwise denied.

## <u>PARTIES AND BACKGROUND</u>

5.      Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 5, and therefore denies them.

6.      Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 6, and therefore denies them.

7.      Admitted that Vertiv has represented that it has indemnity agreements with its customers. Valtrus is otherwise without sufficient knowledge or information to admit or deny the allegations in Paragraph 7, and therefore denies them.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted that Valtrus' website contains the quotation in Vertiv's Complaint, which speaks for itself. Otherwise denied.

12.     Admitted.

13.     Admitted that Valtrus' activities in the United States include the enforcement and licensing of its patent portfolio. Otherwise denied.

14.     Admitted.

15.     Admitted that Valtrus sued Google LLC in the identified Northern District of Texas case. Valtrus denies that it is still pending in that Court.

16.     Admitted.

17.     Admitted that Valtrus filed the listed lawsuits. Denied that those lawsuits were exclusively "alleging patent infringement of the Patents-in-Suit." Denied that those lawsuits were exclusively "based on their use of Vertiv products." Otherwise denied.

18.     Admitted that Valtrus filed the listed lawsuits. Denied that those lawsuits were exclusively "alleging patent infringement of the Patents-in-Suit." Otherwise denied.

19.     Admitted that Valtrus' infringement claim charts refer to technical product information relating to the Vertiv products. Otherwise denied.

20.     Admitted.

21.     Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 21, and therefore denies them.

22.     Admitted that Mr. Berkowitz sent letters on behalf of Valtrus alleging infringement of certain Valtrus patents. Those letters speak for themselves. Otherwise denied.

23.     Admitted that Mr. Berkowitz sent letters on behalf of Valtrus alleging infringement of certain Valtrus patents. Those letters speak for themselves. Otherwise denied.

24.     Admitted that Mr. Berkowitz sent letters on behalf of Valtrus alleging infringement of certain Valtrus patents. Those letters speak for themselves. Otherwise denied.

25.     Admitted that Valtrus sent TierPoint and DataBank letters in March 2024. Those letters speak for themselves. Otherwise denied.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 29, and therefore denies them.

30.     Admitted that Valtrus has engaged in communications with data center operators who have purchased Vertiv equipment. Otherwise denied.

31.     Admitted that Valtrus has sent additional patent infringement notice letters to data center operators who have purchased Vertiv equipment since the filing of the Original Complaint. Otherwise denied.

32.     Admitted that Valtrus has sought technical and damages-related discovery in the lawsuits it has filed in the Eastern District of Texas. Otherwise denied.

33.     Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 33, which seek speculation about future events, and therefore denies them.

34.     Admitted that Vertiv has represented that it has notified customers that it will indemnify them relating to Valtrus' patent infringement allegations. Valtrus is otherwise without sufficient knowledge or information to admit or deny the allegations in Paragraph 34, and therefore denies them.

35.     Valtrus is without sufficient knowledge or information to admit or deny the allegations in Paragraph 35, and therefore denies them.

## **JURISDICTION**

36.     Admitted that Vertiv asserts the basis for its Declaratory Judgment Complaint is 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq. Otherwise denied.

37.     Valtrus denies that the Court has subject matter jurisdiction over Vertiv's Declaratory Judgment claims.

38.     Denied.

39.     Admitted that Valtrus owns and has rights in and title to the Patents-in-Suit. Valtrus holds the Patents-in-Suit patent in trust for KPI. To the extent that this paragraph contains additional allegations, Valtrus denies them.

40.     Admitted.

41.     Valtrus admits for purposes of this action only that the Court has personal jurisdiction over Valtrus. Valtrus admits that it acquired the patents that it owns from HPE. Valtrus admits that it sent letters to companies operating within this District. Those letters speak for themselves. Valtrus admits that PPS is a Texas-based company. The remainder of this paragraph

contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

42.    Valtrus admits for purposes of this action only that the Court has personal jurisdiction over Valtrus. Valtrus admits that it has filed multiple suits for patent infringement in this District. The remainder of this paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

43.    Valtrus admits for purposes of this action only that the Court has personal jurisdiction over Valtrus. Valtrus admits that it submitted the Declaration of Angela Quinlan in a different action, and that document speaks for itself. The remainder of this paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

44.    This paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

45.    Valtrus admits for purposes of this action only that the Court has personal jurisdiction over Valtrus. Valtrus admits that it filed the listed lawsuits. The remainder of this paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

## VENUE

46.     Valtrus admits for purposes of this action only that the venue is proper in this District. The remainder of this paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

## FACTS

47.     Admitted.

48.     Admitted.

49.     Admitted that Valtrus owns and has rights in and title to the '277 patent. Valtrus holds the '277 patent in trust for KPI. To the extent that this paragraph contains additional allegations, Valtrus denies them.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     Admitted that Valtrus owns and has rights in and title to the '287 patent. Valtrus holds the '287 patent in trust for KPI. To the extent that this paragraph contains additional allegations, Valtrus denies them.

54.     Admitted.

55.     Admitted.

56.     Admitted.

57.     Admitted that Valtrus owns and has rights in and title to the '179 patent. Valtrus holds the '179 patent in trust for KPI. To the extent that this paragraph contains additional allegations, Valtrus denies them.

58.     Admitted.

59.     Admitted.

60.     Admitted.

61.     Admitted that Valtrus owns and has rights in and title to the '870 patent. Valtrus holds the '870 patent in trust for KPI. To the extent that this paragraph contains additional allegations, Valtrus denies them.

## <u>EXISTENCE OF AN ACTUAL CONTROVERSY</u>

62.     Denied.

63.     Admitted that Valtrus has sent letters and claim charts to certain data center operators. Those letters and claim charts speak for themselves. Denied that the claim charts "implicitly contain allegations of direct and indirect infringement (jointly and contributorily) against Vertiv." Otherwise denied.

64.     Admitted that Valtrus has filed patent infringement lawsuits that reference use of Vertiv products. Those lawsuits speak for themselves. Denied that the claim charts "implicitly contain allegations of direct and indirect infringement (jointly and contributorily) against Vertiv." Otherwise denied.

65.     Admitted that Valtrus sent letters to TierPoint and DataBank prior to Vertiv's Original Complaint. Admitted that Valtrus filed suits against TierPoint and DataBank in this District. Those letters and complaints speak for themselves. Denied that the claim charts in each case "implicitly contain allegations of direct and indirect infringement (jointly and contributorily) against Vertiv." Otherwise denied.

66.     Admitted that Vertiv has represented it has indemnification obligations to its customers. Valtrus is otherwise without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

67.     Admitted that Valtrus filed at least eight patent infringement lawsuits in 2023 and 2024. Otherwise denied.

68.     This paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

69.     This paragraph contains legal conclusions and thus no response is required. To the extent that a response is required, Valtrus is without sufficient knowledge or information to admit or deny the allegations, and therefore denies them.

70.     Denied.

71.     Denied.

72.     Denied.

## COUNT I

### (Declaratory Judgment of Non-Infringement of the '277 Patent)

73.     This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

74.     Admitted.

75.     Admitted.

76.     Admitted that Valtrus has a controversy with certain Vertiv customers over whether their use of Vertiv products infringes any claims of the '277 Patent. Otherwise denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph.

## COUNT II

### (Declaratory Judgment of Non-Infringement of the '287 Patent)

81.     This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

82.     Admitted.

83.     Admitted.

84.     Admitted that Valtrus has a controversy with certain Vertiv customers over whether their use of Vertiv products infringes any claims of the '287 Patent. Otherwise denied.

85.     Denied.

86.     Denied.

87.     To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph

## COUNT III

### (Declaratory Judgment of Non-Infringement of the '179 Patent)

88.     This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

89.     Admitted.

90.     Admitted.

91.     Admitted that Valtrus has a controversy with certain Vertiv customers over whether their use of Vertiv products infringes any claims of the '179 Patent. Otherwise denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph

## COUNT IV

**(Declaratory Judgment of Non-Infringement of the '870 Patent)**

96.     This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

97.     Admitted.

98.     Admitted.

99.     Admitted that Valtrus has a controversy with certain Vertiv customers over whether their use of Vertiv products infringes any claims of the '870 Patent. Otherwise denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph

## COUNT V

### (Declaratory Judgment of Invalidity of the '277 Patent)

104.    This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

105.    Admitted.

106.    Denied.

107.    Denied.

108.    To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph.

## COUNT VI

### (Declaratory Judgment of Invalidity of the '287 Patent)

109.    This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

110.    Admitted.

111.    Denied.

112.    Denied.

113.    To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph.

## COUNT VII

### (Declaratory Judgment of Invalidity of the '179 Patent)

114.    This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

115.    Admitted.

116.    Denied.

117.    Denied.

118.    To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph.

## COUNT VII[I]

### (Declaratory Judgment of Invalidity of the '870 Patent)

119.    This paragraph does not require an answer. To the extent an answer is required, Valtrus re-alleges and incorporates herein by reference paragraphs 1-72 of its Answer as set forth above.

120.    Admitted.

121.    Denied.

122.    Denied.

123.    To the extent the allegations in this Paragraph set forth a request for relief, no response is required. To the extent a response is required, Valtrus denies the allegations in this Paragraph.

## JURY DEMAND

124.    No response to Vertiv's jury demand is required. To the extent a response is required, Valtrus denies any factual allegations contained in the demand.

## PRAYER FOR RELIEF

125.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

126.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

127.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

128.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

129.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

130.    No response to Vertiv's prayer for relief is required. To the extent a response is required, Valtrus denies any factual allegations contained in the prayer for relief and denies that Vertiv is entitled to any of the requested relief.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

Vertiv's customers' use of the Vertiv products infringes the '277 patent.

### SECOND DEFENSE

Vertiv's customers' use of the Vertiv products infringes the '287 patent.

### THIRD DEFENSE

Vertiv's customers' use of the Vertiv products infringes the '179 patent.

### FOURTH DEFENSE

Vertiv's customers' use of the Vertiv products infringes the '870 patent.

### FIFTH DEFENSE

Vertiv's claims are barred or will be barred by the doctrines of res judicata and/or collateral estoppel in view of other cases in which it is a party or real party in interest of the defendants accused of infringement on the Asserted Patents.

### SIXTH DEFENSE

Vertiv lacks standing to assert the Claims at issue in this Action.

### SEVENTH AFFIRMATIVE DEFENSE

There was no case or controversy at the time that Vertiv filed its Complaint in this Action and no continuing case or controversy establishing subject matter jurisdiction.

### EIGHT AFFIRMATIVE DEFENSE

Vertiv lacks the right to a jury trial in this Action.

## NINTH AFFIRMATIVE DEFENSE

Vertiv's operative Complaint fails to state a claim upon which relief may be granted.

## TENTH AFFIRMATIVE DEFENSE

The Patents-in-Suit are not invalid, ineligible, or unenforceable.

## COUNTERCLAIMS BY COUNTERCLAIM-PLAINTIFFS VALTRUS INNOVATIONS LIMITED AND KEY PATENT INNOVATIONS LIMITED

Pursuant to Federal Rule of Civil Procedure 13, Counterclaim-Plaintiffs Valtrus Innovations Limited and Key Patent Innovations Limited (collectively, "Valtrus" or "Counterclaim-Plaintiffs") allege the following counterclaims against Plaintiff and Counterclaim-Defendant Vertiv Corporation ("Vertiv") and the following additional Counterclaim-Defendants: 11:11 Systems, Inc.; FifteenFortySeven Critical Systems Realty, LLC; 365 Data Centers Holdings, LLC; CDW Corporation; Cogent Communications Holdings, Inc.; Cologix, Inc.; Compass Datacenters, LLC; Equinix, Inc.; EvoDC, LLC; FDC Servers.net, LLC; H5 Colo, Inc.; H5 Data Centers LLC; Iron Mountain Incorporated; Lumen Technologies, Inc.; McAllen Data Center, LLC; Netrality Properties, LP; NTT Global Data Centers Americas, Inc.; Prime Data Centers, LLC; Quasar Data Center, Ltd.; Sabey Corporation; Serverfarm, LLC; Strasmore, Inc.; T5 Data Centers, LLC; TRG Datacenters, LLC; and DOES 1-200. Each of the Counterclaim-Defendants other than Vertiv are collectively referred to as "Vertiv Customers."[1]

## INTRODUCTION

1.      This case concerns use of certain Vertiv products (specifically, the products that are the subject of this case, pursuant to Vertiv's Second Amended Complaint, collectively "Accused Vertiv Products" or, when such Accused Vertiv Products are used to cool data centers, the "Accused Vertiv Methods") by Vertiv Customers in the United States. Valtrus seeks to hold Vertiv and each of the Vertiv Customers liable for Vertiv Customers' infringement of U.S. Patent Nos. 6,854,287 ("the '287 Patent"); 6,862,179 ("the '179 Patent"); and 6,868,682 ("the '682 Patent") (collectively, the "Counterclaim Patents") based on use of the Accused Vertiv Products. In addition, Valtrus seeks

---

[1] For the avoidance of doubt, "Vertiv Customers" as used in this Counterclaim does not refer to any entity that is licensed to the Counterclaim Patents.

damages for the Vertiv Customers' infringement of the Counterclaim Patents using cooling equipment from other suppliers beyond Vertiv ("Accused Non-Vertiv Products" or, when such Accused Non-Vertiv Products are used to cool data centers, the "Accused Non-Vertiv Methods").[2]

2.      Vertiv has repeatedly represented to this Court that it is responsible, and is taking responsibility, for any liability that Vertiv Customers may have for the Accused Vertiv Products and Accused Vertiv Methods as it concerns alleged infringement of Valtrus's Patents. Moreover, Vertiv has asserted that this Court has subject matter jurisdiction over its declaratory judgment action entirely because of the indemnity that it owes all of its customers for such alleged infringement. Indeed, Vertiv has explained that this action is based entirely on the actions of Vertiv's customers and is not directed to any actions involving Vertiv directly. Dkt. 138 at 3 n.3.

3.      Vertiv is the Real Party in Interest and in privity with each of the Vertiv Customers at least as it concerns Vertiv Customers' infringement of the Counterclaim Patents using the Accused Vertiv Products and performing the Accused Vertiv Methods.

4.      Vertiv has also repeatedly stated that it would be more efficient to litigate all issues relating to alleged infringement by the Vertiv Customers of Valtrus's patents, including at least the '287 Patent and the '179 Patent, in this case, as compared to a series of successive individual cases.

5.      Vertiv has repeatedly taken positions and made statements in this litigation that show it is (i) taking responsibility for Vertiv Customers' infringement of the Counterclaim Patents using the Vertiv Accused Products; (ii) representing that it is the Real Party in Interest; and (iii) indicating that this forum is the most efficient for a complete resolution of all disputed issues

---

[2] Exemplary Accused Non-Vertiv Products and Accused Non-Vertiv Methods are shown in the claim charts attached as Exhibits 5, 7, and 9.

concerning Valtrus's Patents and Vertiv products. Examples of these statements are highlighted in the following paragraphs.

6.     In its Original Declaratory Judgment Complaint against Valtrus filed in May 2024 ("Original Complaint"), Vertiv sought a declaration of non-infringement of the '287 Patent and the '179 Patent that applied to "all of its customers." Vertiv further stated (i) "Vertiv seeks relief resolving the controversy between the real parties in interest, Valtrus and Vertiv, to protect its relationships with its many customers and to remove the uncertainty and false accusations of patent infringement against its products"; (ii) it is "contractually bound to indemnify and defend customers against patent infringement claims related to the use of Vertiv products pursuant to various contracts and sales agreements"; (iii) it is an inefficient use of judicial resources "for Vertiv to be forced to defend itself and its customers from Valtrus's unjustified patent infringement claims serially and concurrently in suits against each customer individually in various forums of Valtrus' choice"; and (iv) absent an infringement ruling that applies to "all of [Vertiv's] customers, Valtrus will continue to wrongfully allege that Vertiv's products and services infringe the Patents-in-Suit, will continue to contact and sue customers in repetitive cases in various forums increasing the cost of defense to Vertiv and its customers, and will, thereby, cause Vertiv irreparable injury and damage."

7.     Vertiv has intervened, on behalf of its customers, in several cases where Valtrus has asserted at least two of the Counterclaim Patents and additional similar patents relating to data center cooling. In connection with motions to intervene in two of those cases, Vertiv stated that "Vertiv stands by its products through indemnity agreements. Vertiv has contractual indemnity obligations to its customers . . . for infringement allegations such as Valtrus' assertions directed to Vertiv's products and technology." Dkt. 71 at 4; Dkt. 72 at 4. According to Vertiv, its indemnity

obligations "require Vertiv to indemnify, defend, and hold [its customers] harmless," and "in the event any of the claims of the Patents Asserted Against Vertiv Products are finally determined to be valid and infringed based on the use of Vertiv's products (and consistent with the indemnity provisions), Vertiv would be responsible for any such damages asserted against [its customers]." *Id.*

8.    At oral argument on September 10, 2025 in this case, Vertiv stated that that the "straightforward answer [to the question of whether 35 U.S.C. § 315(a)(2) applies to Vertiv's invalidity claims] is they've [Valtrus has] sued our RPIs and this statute doesn't apply, the stay doesn't apply, there's no - - there's no basis for instituting any stay because they've sued our RPIs."

9.    In opposition to Valtrus's first Motion to Dismiss, Vertiv stated: "Valtrus's actions . . . result in Vertiv having obligations to indemnify its customers based on express contractual indemnity provisions, and thus create an actual controversy between Vertiv and Valtrus. Accordingly, Vertiv brought this declaratory judgment action to lift that cloud over the use of its technology. This action represents the battlefield on which the larger fight is being fought, while Valtrus seeks Vertiv to repeatedly intervene and fight multiple battles defending individual customers." Dkt. 87 at 1. Vertiv also stated that "the lawsuits against Vertiv's individual customers do not provide a forum for more broadly addressing Valtrus's campaign directed to at least the customers receiving Valtrus's demand letters or subject to suit after the filing of this declaratory judgment action." *Id.* at 5.

10.    In its Original Complaint in this matter, Vertiv stated: "Each additional customer lawsuit that Valtrus files will continue to increase the cost to Vertiv of complying with discovery requests and will disrupt Vertiv's business priorities as a provider of critical infrastructure and services for data centers and related facilities." Original Complaint ¶ 32.

11.     In opposition to Valtrus's most recent motion to dismiss, Vertiv again stated that "This litigation represents the battlefield on which the larger fight is being fought and is the most efficient venue to address the issues at stake." Dkt. 138 at 2.

12.     Vertiv has also indicated that all Vertiv products work in the same way and are not modifiable by the Vertiv Customers. For example, at the September 10, 2025 hearing in this matter, Vertiv stated that its products are not "modifiable" and not "changeable." "The clients - - the customers can't do anything about it."

13.     Based on these statements and Vertiv's other statements made during the parties litigations in this Court and other disputes involving Valtrus and Vertiv relating to one or more of the Counterclaim Patents, Vertiv is responsible for, has agreed to be responsible for, and has indicated that Valtrus is the third-party beneficiary of, any infringement by the Vertiv Customers of Valtrus's Patents for use of the Accused Vertiv Products and Accused Vertiv Methods and has agreed that this forum is the most efficient and logical to resolve all of those disputes at once. Valtrus therefore seeks relief against Vertiv and Vertiv's Customers jointly, severally, or in the alternative based on the same series of transactions or occurrences relating to the use of the same accused processes. In addition, because on information and belief, the Vertiv Customers use cooling equipment from other suppliers, Valtrus also seeks relief for that infringement as part of this case (i.e., based on the Accused Non-Vertiv Products and for use of the Accused Non-Vertiv Methods).

## **PARTIES**

14.     Counterclaim-Plaintiff Valtrus Innovations Ltd. is the successor-in-interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor, subsidiary, and affiliate companies, including Hewlett-Packard Development Company, L.P. (collectively,

"HPE"). Valtrus is an Irish entity duly organized and existing under the laws of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland. HPE's worldwide corporate headquarters is located in Houston, Texas. One of HPE's primary U.S. facilities is located in Plano, Texas.

15.    Counterclaim-Plaintiff Key Patent Innovations Ltd. is the beneficiary of a trust pursuant to which Valtrus owns, holds, and asserts the Asserted Patents. KPI is an Irish entity duly organized and existing under the laws of Ireland. The address of the registered office of KPI is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

16.    On information and belief, Counterclaim-Defendant Vertiv Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 505 N. Cleveland Ave., Westerville, OH 43082.

17.    On information and belief, Counterclaim-Defendant 11:11 Systems, Inc. ("11:11 Systems") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, 11:11 Systems can be served with process at Corporation Service Company DBA CSC – Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

18.    On information and belief, Counterclaim-Defendant FifteenFortySeven Critical Systems Realty, LLC ("1547 Critical Systems Realty") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, 1547 Critical Systems Realty can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

19.    On information and belief, Counterclaim-Defendant 365 Data Centers Holdings, LLC ("365 Data Centers") is a limited liability company organized and existing under the laws of

the State of Delaware. On information and belief, 365 Data Centers can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

20.     On information and belief, Counterclaim-Defendant CDW Corporation ("CDW") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, CDW can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

21.     On information and belief, Counterclaim-Defendant Cogent Communications Holdings, Inc. ("Cogent Communications") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Cogent Communications can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

22.     On information and belief, Counterclaim-Defendant Cologix, Inc. ("Cologix") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Cologix can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

23.     On information and belief, Counterclaim-Defendant Compass Datacenters, LLC ("Compass Datacenters") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, Compass Datacenters can be served with process at Corporation Service Company DBA CSC – Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

24.     On information and belief, Counterclaim-Defendant Equinix, Inc. ("Equinix") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Equinix can be served with process at United Agent Group, Inc, 1521 Concord Pike Suite 201, Wilmington, DE 19803.

25.    On information and belief, Counterclaim-Defendant EvoDC, LLC ("Evocative") is a limited liability company organized and existing under the laws of the State of California. On information and belief, Evocative can be served with process at CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

26.    On information and belief, Counterclaim-Defendant FDC Servers.net, LLC ("FDC Servers.net") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, FDC Servers.net can be served with process at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

27.    On information and belief, Counterclaim-Defendant H5 Colo, Inc. ("H5 Colo") is a corporation organized and existing under the laws of the State of Texas. On information and belief, H5 Colo can be served with process through its registered agent Walter Chambers at 12700 Park Central Suite #102, Dallas, TX 75251.

28.    On information and belief, Counterclaim-Defendant H5 Data Centers LLC ("H5 Data Centers") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, H5 Data Centers can be served with process at Paracorp Incorporated, 14001 W. Hwy. 29, Suite 102, Liberty Hill, TX 78642.

29.    On information and belief, Counterclaim-Defendant Iron Mountain Incorporated ("Iron Mountain") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Iron Mountain can be served with process at Corporation Service Company DBA CSC – Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

30.    On information and belief, Counterclaim-Defendant Lumen Technologies, Inc. ("Lumen") is a corporation organized and existing under the laws of the State of Louisiana. On

information and belief, Lumen can be served with process at CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

31.     On information and belief, Counterclaim-Defendant McAllen Data Center, LLC ("MDC Datacenters") is a limited liability company organized and existing under the laws of the State of Texas. On information and belief, MDC Datacenters can be served with process through its registered agent Georgina Salazar at 200 South 10th, Suite 701, McAllen, TX 78501.

32.     On information and belief, Counterclaim-Defendant Netrality Properties, LP ("Netrality") is a limited partnership organized and existing under the laws of the State of Delaware. On information and belief, Netrality can be served with process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

33.     On information and belief, Counterclaim-Defendant NTT Global Data Centers Americas, Inc. ("NTT") is a corporation organized and existing under the laws of the State of Nevada. On information and belief, NTT can be served with process at National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, TX 75201.

34.     On information and belief, Counterclaim-Defendant Prime Data Centers, LLC ("Prime Data Centers") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, Prime Data Centers can be served with process at Paracorp Incorporated, 14001 W. Hwy. 29, Suite 102, Liberty Hill, TX 78642.

35.     On information and belief, Counterclaim-Defendant Quasar Data Center, Ltd. ("Quasar Data Center") is a limited liability company organized and existing under the laws of the State of Texas. On information and belief, Quasar Data Center can be served with process at its registered agent Levinthal Wilkins PLLC, 2323 S. Shepherd Drive, Suite 1000, Houston, TX 77019.

36.     On information and belief, Counterclaim-Defendant Sabey Corporation ("Sabey") is a corporation organized and existing under the laws of the State of Washington. On information and belief, Sabey can be served with process at 12201 Tukwila International Blvd. Fl. 4, Tukwila, WA 98168.

37.     On information and belief, Counterclaim-Defendant Serverfarm, LLC ("Serverfarm") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, Serverfarm can be served with process at Capitol Services, Inc., 108 Lakeland Ave., Dover, DE 19901.

38.     On information and belief, Counterclaim-Defendant Strasmore, Inc. ("SSD Nodes") is a corporation organized and existing under the laws of the State of Delaware. On information and belief, SSD Nodes can be served with process at Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958.

39.     On information and belief, Counterclaim-Defendant T5 Data Centers, LLC ("T5 Data Centers") is a limited liability company organized and existing under the laws of the State of Delaware. On information and belief, T5 Data Centers can be served with process at Corporation Service Company DBA CSC – Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701.

40.     On information and belief, Counterclaim-Defendant TRG Datacenters, LLC ("TRG Datacenters") is a limited liability company organized and existing under the laws of the State of Texas. On information and belief, TRG Datacenters can be served with process at its headquarters at 2626 Spring Cypress Road, Spring, TX 77388.

41.     On information and belief, Vertiv has more than 100 additional customers of the Accused Vertiv Products and will be able to identify those Counterclaim-Defendants the course of the litigation. Valtrus is not certain of the identity of all of the Vertiv Customers and therefore

identifies them as Does 1-200 in this Counterclaim. Valtrus intends to take discovery concerning the identity of all Vertiv Customers and will identify the Does 1-200 Counterclaim-Defendants by name thereafter.

## COUNTERCLAIM PATENTS

42.     Valtrus is the assignee of and owns all right and title to each of the Counterclaim Patents.

43.     The Counterclaim Patents were developed by inventors working for HPE. HPE developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to data center cooling and analytics for monitoring conditions in data centers.

44.     The '287 Patent, entitled "entitled "Cooling system," was duly and lawfully issued on February 15, 2005. A true and correct copy of the '287 Patent is attached hereto as Exhibit 1.

45.     The '287 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '287 Patent, including the right to seek damages, including past damages, for any infringement thereof.

46.     The '179 Patent, entitled "Partition for varying the supply of cooling fluid," was duly and lawfully issued on March 1, 2005. A true and correct copy of the '179 Patent is attached hereto as Exhibit 2.

47.     The '179 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '179 Patent, including the right to seek damages, including past damages, for any infringement thereof

48.     The '682 Patent, entitled "Agent Based Control Method and System for Energy Management," was duly and lawfully issued on March 22, 2005. A true and correct copy of the '682 Patent is attached hereto as Exhibit 3.

49.    The '682 Patent was in full force and effect from its issuance to its expiration. Valtrus owns by assignment the entire right and title in and to the '682 Patent, including the right to seek damages, including past damages, for any infringement thereof.

## JURISDICTION

50.    Valtrus incorporates by reference paragraphs 1-49 herein.

51.    This counterclaim arises under the Declaratory Judgment Act and/or the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a counterclaim in a declaratory judgment lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, 1338(a), and/or 2201.

52.    An actual, substantial, and continuing controversy exists between Valtrus and Vertiv with respect to Vertiv's liability to Valtrus for damages in connection with Vertiv Customers' infringement of the Counterclaim Patents (i) pursuant to indemnity obligations that Vertiv relies on to establish Declaratory Judgment jurisdiction in its Complaint, and (ii) because of Vertiv's various representations and statements, as set out above. An actual, substantial, and continuing controversy exists between Valtrus and the other Counterclaim-Defendants based on their infringement of the Counterclaim Patents, both using the Accused Vertiv Products and using the Accused Non-Vertiv Products.

53.    This Court has general and specific personal jurisdiction over Vertiv because Vertiv submitted to the personal jurisdiction of this Court by filing its Second Amended Complaint and litigating this case in this Distrct. The Court also has personal jurisdiction over Vertiv because it has sufficient minimum contacts with the State of Texas in connection with the subject matter of this dispute, including through its sale and delivery of Vertiv products to customers throughout Texas, including in this District, that are used to infringe the Asserted Patents. Vertiv also maintains

a service center in Houston, and has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause.

### 11:11 Systems

54.     This Court has general and specific personal jurisdiction over 11:11 Systems. 11:11 Systems is registered to do business in Texas, with a Texas mailing address of 1235 North Loop West, Suite 800, Houston, TX 77008. 11:11 Systems advertises its office located at 1235 North Loop West, Suite 800, Houston, TX 77008.[3] 11:11 Systems also advertises having a presence in Dallas, TX.[4] On information and belief, 11:11 Systems operates a data center in this District located at 1649 W Frankford Rd., Carrollton, TX 75007.[5] 11:11 Systems has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over 11:11 Systems because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated this litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[3] https://1111systems.com/contact-us/?q_showExperience=experience-1754573218880
[4] https://1111systems.com/why-1111/cloud-regions/#na
[5] https://www.datacenters.com/11-11-systems-carrollton

55.     11:11 Systems is a Vertiv Customer. For example, 11:11 Systems advertises using dozens of Liebert CRAC units in its data centers.[6]

56.     On information and belief, 11:11 Systems used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**1547 Critical Systems Realty**

57.     This Court has general and specific personal jurisdiction over 1547 Critical Systems Realty. 1547 Critical Systems Realty operates a data center at 200 South 10th Street, McAllen, TX 78501.[7] 1547 Critical Systems Realty also advertises a presence in Dallas, TX.[8] 1547 Critical Systems Realty has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over 1547 Critical Systems Realty because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

58.     1547 Critical Systems Realty is a Vertiv Customer. For example, 1547 Critical Systems Realty advertises using Liebert iCOM temperature/humidity monitoring systems and Emerson Network Power cooling systems in its data centers.[9]

---

[6] https://1111systems.com/wp-content/uploads/2024/06/1111systems-9917-carlstadt-data-center-datasheet-r4.pdf
[7] https://www.1547realty.com/wp-content/uploads/McAllen-Spec-Sheet-2025.pdf
[8] https://www.1547realty.com/wp-content/uploads/McAllen-Spec-Sheet-2025.pdf
[9] https://www.1547realty.com/wp-content/uploads/AlohaNAP-Spec-Sheet-Overview-2025.pdf

59.    On information and belief, 1547 Critical Systems Realty used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**365 Data Centers**

60.    This Court has general and specific personal jurisdiction over 365 Data Centers. 365 Data Centers operates a data center at 1001 E. Campbell Road, Richardson, TX 75081.[10] 365 Data Centers has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over 365 Data Centers because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

61.    365 Data Centers is a Vertiv Customer. For example, 365 Data Centers advertises using Liebert cooling units on raised floors in its data centers.[11]

62.    On information and belief, 365 Data Centers used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**CDW**

63.    This Court has general and specific personal jurisdiction over CDW. CDW is registered to do business in Texas, and operates four offices in Texas, including one in this District

---

[10] https://365datacenters.com/richardson-data-center/
[11] https://365datacenters.com/marlborough-data-center/#:~:text=Our%20Marlboro%20data%20center%20is,quadrant%20of%20the%20United%20States.

at 5908 Headquarters Dr. Suite 400, Plano, TX 75024.[12] CDW has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over CDW because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

64.    CDW is a Vertiv Customer. For example, Vertiv published a case study about CDW's use of Liebert cooling equipment in its data centers.[13]

65.    On information and belief, CDW used the used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Cogent Communications**

66.    This Court has general and specific personal jurisdiction over Cogent Communications. Cogent Communications operates data centers and has offices throughout the state of Texas, including data centers in Irving, Dallas, Fort Worth, Austin, Houston, Amarillo, El Paso, McAllen, and San Antonio; and offices in Dallas, Addison, Austin, Houston, and San Antonio.[14] Cogent Communications has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent

---

[12] https://www.cdw.com/content/cdw/en/solutions/international/north-america-locations.html
[13] https://www.vertiv.com/492daa/globalassets/shared/cdw-berbee-case-study.pdf
[14] https://www.cogentco.com/en/cogent-dallas

with the Due Process Clause. The Court also has specific personal jurisdiction over Cogent Communications because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

67.    Cogent Communications is a Vertiv Customer. For example, Cogent Communications advertises using Liebert HVAC units in its data centers.[15]

68.    On information and belief, Cogent Communications used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

### Cologix

69.    This Court has general and specific personal jurisdiction over Cologix. Cologix is registered to do business in Texas. Cologix operates three data centers in Texas at 1950 North Stemmons Freeway, Dallas, TX.[16] Cologix has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Cologix because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[15]

https://support.cogentco.com/files/docs/network/colocation/Waltham_Data_Center_Brochure.pdf
[16] https://cologix.com/data-centers/dallas/

70.     Cologix is a Vertiv customer. For example, a public version of Vertiv's interrogatory responses identify Cologix as a Vertiv customer. *See* Dkt. 98. Cologix's website also advertises using Liebert cooling systems in its data centers.[17]

71.     On information and belief, Cologix used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Compass Datacenters**

72.     This Court has general and specific personal jurisdiction over Compass Datacenters. Compass Datacenters is headquartered in Texas at 14555 N. Dallas Pkwy., Suite 125, Dallas TX 75254. Compass Datacenters is registered to do business in Texas, with its headquarters listed as its Texas mailing address, establishing general personal jurisdiction. Compass Datacenters also advertises Dallas-Forth Worth as one of its markets.[18] Compass Datacenters has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Compass Datacenters because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

73.     Compass Datacenters is a Vertiv Customer. For example, Compass Datacenters advertises partnering with Vertiv to implement Vertiv's Liebert cooling systems in its data

---

[17] https://cologix.com/data-centers/columbus/col3/;
https://www.cologix.com/pdf/LAKDataCenter_SpecSheet82018.pdf
[18] https://www.compassdatacenters.com/data-center-markets/

centers.[19] Vertiv's cooling equipment can also be seen inside Compass Datacenters facilities in other advertisements.[20]

74.    On information and belief, Compass Datacenters used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Equinix**

75.    This Court has general and specific personal jurisdiction over Equinix. Equinix operates a data center in this District at DA7, located at 6653 Pinecrest Drive, Plano, TX 75024.[21] Equinix also advertises extensive additional operations in Texas, including operating eight other data centers in the Dallas area[22] and another data center in Houston.[23] Equinix has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Equinix because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[19] https://www.compassdatacenters.com/news/vertiv-compass-hybrid-liquid-air-cooling-ai-deployment/
[20] https://www.youtube.com/watch?v=JrL-4JKHzAs at 1:43.
[21] https://www.equinix.com/data-centers/americas-colocation/united-states-colocation/dallas-data-centers/da7
[22] https://www.equinix.com/data-centers/americas-colocation/united-states-colocation/dallas-data-centers
[23] https://www.equinix.com/data-centers/americas-colocation/united-states-colocation/houston-data-centers/ho1

76.     Equinix is a Vertiv Customer. For example, Vertiv's cooling equipment can be seen inside Equinix's data centers in photographs on Equinix's website.[24]

77.     On information and belief, Equinix used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

<strong>Evocative</strong>

78.     This Court has general and specific personal jurisdiction over Evocative. Evocative operates two data centers in this District, including one at 2800 Summit Ave., Plano, TX 75074[25]; and another at 1221 Coit Rd., Plano, TX 75075.[26] Evocative also advertises additional points of presence in Dallas, Texas.[27] Evocative has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Evocative because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

79.     Evocative is a Vertiv Customer. For example, Evocative advertises installing new Liebert cooling systems in its data centers.[28]

---

[24] https://www.equinix.com/data-centers/americas-colocation/united-states-colocation/atlanta-data-centers/at4
[25] https://evocative.com/data-centers/plano-tx-data-center-dal1/
[26] https://evocative.com/data-centers/dallas-tx-data-center-dal6/
[27] https://evocative.com/data-centers/
[28] https://www.prweb.com/releases/evocative_data_centers_bolsters_its_green_energy_initiative_significantly_reducing_pue_in_its_silicon_valley_facilities/prweb16503554.htm

80.     On information and belief, Evocative used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**FDC Servers.net**

81.     This Court has general and specific personal jurisdiction over FDC Servers.net. FDC Servers.net operates data centers in both Dallas and Houston.[29] FDC Servers.net has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over FDC Servers.net because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

82.     FDC Servers.net is a Vertiv customer. For example, FDC Servers.net utilizes Liebert HVAC units in its data centers.[30]

83.     On information and belief, FDC Servers.net used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**H5 Colo**

84.     This Court has general and specific personal jurisdiction over H5 Colo. H5 Colo is headquartered and registered to do business in Texas at 12712 Park Central Drive, Suite 200, Dallas, TX 75251, establishing general personal jurisdiction.[31] H5 Colo operates a data center at

---

[29] https://fdcservers.net/product/colocation
[30] https://datacentercatalog.com/usa/fdcserversnet-chicago1
[31] https://h5colo.com/

this address.[32] H5 Colo has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over H5 Colo because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

85.     H5 Colo is a Vertiv Customer. For example, H5 Colo advertises Liebert HVAC units installed in its data center.[33] Other H5 Colo brochures contain the same information about Liebert HVAC units installed in its Dallas data center.[34]

86.     On information and belief, H5 Colo used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**H5 Data Centers**

87.     This Court has general and specific personal jurisdiction over H5 Data Centers. H5 Data Centers is registered to do business in the State of Texas. H5 Data Centers operates a data center at 100 Taylor Street, San Antonio, TX 78205.[35] H5 Data Centers has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal

---

[32] https://h5colo.com/dallas-facility/
[33] https://h5colo.com/dallas-facility/
[34] https://cdn.baxtel.com/data-center/h5-colo/files/H5ColoBrochure.pdf
[35] https://h5datacenters.com/slick-sanantonio.pdf

jurisdiction over H5 Data Centers because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

88.    H5 Data Centers is a Vertiv Customer. For example, Vertiv cooling equipment can be seen inside H5 Data Centers facilities in various videos advertised by H5 Data Centers.[36]

89.    On information and belief, H5 Data Centers used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Iron Mountain**

90.    This Court has general and specific personal jurisdiction over Iron Mountain. Iron Mountain is registered to do business in Texas. Iron Mountain operates dozens of facilities in Texas.[37] Iron Mountain also operates facilities in this District, including in Tyler and Lewisville, Texas.[38] Iron Mountain has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Iron Mountain because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[36] https://www.youtube.com/watch?v=Ts5FFzwaXA0 at 0:37; https://www.youtube.com/watch?v=8ZmJhdbz7Sw at 0:29.
[37] https://locations.ironmountain.com/tx/
[38] https://locations.ironmountain.com/tx/tyler/; https://locations.ironmountain.com/tx/lewisville/

91.     Iron Mountain is a Vertiv Customer. For example, a public version of Vertiv's interrogatory responses identify Iron Mountain as a Vertiv Customer. *See* Dkt. 98. Vertiv's cooling equipment can also be seen inside Iron Mountain's data centers in public video tours.[39]

92.     On information and belief, Iron Mountain used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Lumen**

93.     This Court has general and specific personal jurisdiction over Lumen. Lumen operates data centers throughout Texas, including in Amarillo, Austin, Corpus Christi, Dallas, El Paso, Fort Worth, Harlingen, Houston, Laredo, Lubbock, McAllen, San Antonio, Stratford, Waco, and Wichita Falls.[40] Lumen also has an office in this District at 6801 Gaylord Parkway, Frisco, TX 75034.[41] Lumen has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Lumen because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[39] https://www.youtube.com/watch?v=pNjrHrHbmbw at 2:30.
[40] https://assets.lumen.com/is/content/Lumen/colocation-location-data-sheet?Creativeid=936d4e33-cf54-4625-b4f2-8a8e224af6eb
[41] https://www.lumen.com/en-us/contact-us/office-locations.html

94.     Lumen is a Vertiv Customer. For example, a public version of Vertiv's interrogatory responses identify Lumen as a Vertiv Customer. *See* Dkt. 98. Lumen also advertises using Liebert's cooling systems in its data centers.[42]

95.     On information and belief, Lumen used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**MDC Datacenters**

96.     This Court has general and specific personal jurisdiction over MDC Datacenters. MDC Datacenters is headquartered in Texas and is registered to do business in Texas at 200 South 10th Street, Suite 702, McAllen, TX 78501, establishing general personal jurisdiction. MDC Datacenters also operates data centers throughout Texas, including in McAllen, Laredo, El Paso, and Eagle Pass.[43] MDC Datacenters has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over MDC Datacenters because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

97.     MDC Datacenters is a Vertiv Customer. For example, MDC Datacenters advertises using Vertiv's Liebert cooling system in its data centers.[44]

---

[42] https://assets.lumen.com/is/content/Lumen/minnetonka-mn-data-center?Creativeid=df8d075e-98fb-4fc4-9e63-f6f971e387e2; https://assets.lumen.com/is/content/Lumen/san-francisco-ca-data-center?Creativeid=6d2b2b15-bda6-442e-9647-af415ea71bff.
[43] https://www.mdcdatacenters.com/company/contact-us/
[44] https://www.mdcdatacenters.com/services/colocation/colocation-settings/

98.    On information and belief, MDC Datacenters used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Netrality**

99.    This Court has general and specific personal jurisdiction over Netrality. Netrality operates a data center at 1301 Fannin St., Houston, TX 77002.[45] Netrality has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Netrality because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

100.    Netrality is a Vertiv Customer. For example, images show Vertiv cooling equipment inside Netrality's data centers.[46] Other companies also advertise using Vertiv cooling equipment inside Netrality's data centers.[47]

101.    On information and belief, Netrality used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**NTT**

102.    This Court has general and specific personal jurisdiction over NTT. NTT is registered to do business in Texas. NTT operates two data centers in Texas, including one at 2008

---

[45] https://netrality.com/brochures/1301-fannin-houston-data-center-brochure/
[46] https://netrality.com/data-center/401-north-broad-philadelphia/
[47] https://www.medidata.com/wp-content/uploads/2021/04/Medidata-Information-Security-Whitepaper-MARCH-2021-1.pdf

Lookout Dr., Garland, TX 75044[48]; and another at 2060 Lookout Dr., Garland, TX 75044.[49] NTT has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over NTT because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

103.    NTT is a Vertiv Customer. For example, a public version of Vertiv's interrogatory responses identify NTT as a Vertiv Customer. *See* Dkt. 98. Vertiv's cooling equipment can be seen inside NTT data centers in public video tours.[50]

104.    On information and belief, NTT used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Prime Data Centers**

105.    This Court has general and specific personal jurisdiction over Prime Data Centers. Prime Data Centers is registered to do business in Texas and is headquartered at 400 N Ervay St., Unit 131465, Dallas, TX 75313, establishing general personal jurisdiction.[51] Prime Data Centers operates data centers in Dallas at 1515 Round Table Dr., Dallas, TX 75247 and 1455 Round Table

---

[48] https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas/dallas-tx-1-data-center
[49] https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas/dallas-tx-4-data-center
[50] https://services.global.ntt/en-us/services-and-products/global-data-centers/global-locations/americas/hillsboro-hi1-data-center at 0:46.
[51] https://primedatacenters.com/

Dr., Dallas, TX 75247.[52] Prime Data Centers also operates eight data centers in Austin, TX.[53] Prime Data Centers has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Prime Data Centers because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

106.    Prime Data Centers is a Vertiv Customer. For example, Vertiv cooling equipment can be seen inside Prime Data Centers facilities in video tours.[54]

107.    On information and belief, Prime Data Centers used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Quasar Data Center**

108.    This Court has general and specific personal jurisdiction over Quasar Data Center. Quasar Data Center is headquartered and registered to do business in Texas at 1001 Texas Street, Suite 310, Houston, TX 77002, establishing general personal jurisdiction.[55] Quasar Data Center operates a data center at this address.[56] Quasar Data Center has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of

---

[52] https://primedatacenters.com/locations/dallas/
[53] https://primedatacenters.com/locations/austin/
[54] https://youtu.be/JE6PWm7h9gk?si=5fxhWH5OWtghVyCD at 3:57 and 4:21.
[55] https://www.quasardata.com/
[56] https://www.quasardata.com/company/data-center-facility/

personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Quasar Data Center because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

109.    Quasar Data Center is a Vertiv Customer. For example, Quasar Data Center advertises using Liebert cooling systems in its data center facility.[57]

110.    On information and belief, Quasar Data Center used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

### Sabey

111.    This Court has general and specific personal jurisdiction over Sabey. Sabey is building and plans to operate a large data center in Austin, Texas.[58] Sabey has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Sabey because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

112.    Sabey is a Vertiv Customer. For example, Vertiv cooling equipment can be seen inside Sabey data center facilities in photographs from Sabey's website.[59]

---

[57] https://www.quasardata.com/company/data-center-facility/
[58] https://sabeydatacenters.com/locations/austin-data-center
[59] https://sabeydatacenters.com/locations/seattle-data-center

113.    On information and belief, Sabey used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Serverfarm**

114.    This Court has general and specific personal jurisdiction over Serverfarm. Serverfarm operates two data centers in Houston, Texas.[60] Serverfarm has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Serverfarm because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

115.    Serverfarm is a Vertiv Customer. For example, public information describes that facilities owned by Serverfarm contain Liebert cooling equipment.[61]

116.    On information and belief, Serverfarm used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**SSD Nodes**

117.    This Court has personal jurisdiction over SSD Nodes. SSD Nodes operates a data center in Dallas, Texas.[62] SSD Nodes has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is

---

[60] https://www.serverfarmllc.com/data-centers/
[61] https://baxtel.com/data-center/us-signal-oakbrook-il01
[62] https://www.ssdnodes.com/dallas/

proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over SSD Nodes because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

118.    SSD Nodes is a Vertiv Customer. For example, SSD Nodes advertises that is uses Liebert HVAC units in its data centers.[63]

119.    On information and belief, SSD Nodes used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

### T5 Data Centers

120.    This Court has personal jurisdiction over T5 Data Centers. T5 Data Centers is registered to do business in Texas. T5 Data Centers completed a data center in this District in Plano, TX.[64] T5 Data Centers also advertises another data center in Dallas, TX.[65] T5 Data Centers has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over T5 Data Centers because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

---

[63] https://www.ssdnodes.com/blog/comparison-hetzner-vs-vultr-vs-ssd-nodes/
[64] https://t5datacenters.com/locations/t5-plano/
[65] https://t5datacenters.com/locations/t5-dallas-iii/

121.     T5 Data Centers is a Vertiv Customer. For example, T5 Data Centers advertises using Liebert cooling systems in its data centers.[66]

122.     On information and belief, T5 Data Centers used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

### TRG Datacenters

123.     This Court has general and specific personal jurisdiction over TRG Datacenters. TRG Datacenters is headquartered in Texas at 2626 Spring Cypress Road, Spring, TX 77388, establishing general personal jurisdiction.[67] TRG operates a data center in Houston, TX.[68] TRG also advertises that it is building additional data centers in Dallas and Austin, TX.[69] TRG Datacenters has maintained offices, employees, and business operations in Texas, and has therefore purposefully availed itself of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over TRG Datacenters because, on information and belief, it purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

124.     TRG Datacenters is a Vertiv Customer. For example, a public version of Vertiv's interrogatory responses identify TRG Datacenters as a Vertiv Customer. *See* Dkt. 98. Vertiv cooling equipment can also be seen inside TRG Datacenters facilities in public video tours.[70] TRG

---

[66] https://t5datacenters.com/resources/t5-data-centers-enters-european-market-with-addition-of-t5-ireland-data-center-campus/
[67] https://www.trgdatacenters.com/
[68] https://www.trgdatacenters.com/infrastructure/houston-data-center/
[69] https://www.trgdatacenters.com/infrastructure/dallas-data-center/
[70] https://www.youtube.com/watch?v=tOvlIOK9O1E at 0:10.

Datacenter' CEO also published an article praising and recommending use of the Liebert cooling systems in data centers.[71] Public articles also describe details of the Liebert cooling equipment installed in a TRG Datacenters facility.[72]

125.    On information and belief, TRG Datacenters used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

**Does 1-200**

126.    On information and belief, Counterclaim-Defendants Does 1-200 are Vertiv Customers that Counterclaim-Plaintiffs have been unable to identify through public information.

127.    On information and belief, this Court has general and specific personal jurisdiction over Does 1-200. On information and belief, Does 1-200 have maintained offices, employees, and business operations in Texas, and have therefore purposefully availed themselves of the privileges of conducting business in Texas and has minimum contacts with the State of Texas. The exercise of personal jurisdiction is proper under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with the Due Process Clause. The Court also has specific personal jurisdiction over Does 1-200 because, on information and belief, they purchased (directly or indirectly) the Accused Vertiv Products from Vertiv, who initiated litigation in this Court relating to the Vertiv Customers' infringement based on the use of those Accused Vertiv Products.

128.    On information and belief, Does 1-200 used the Accused Vertiv Products and/or performed the Accused Vertiv Methods prior to the expiration of the Counterclaim Patents.

---

[71] https://www.trgdatacenters.com/resource/how-to-build-your-own-data-center/
[72] https://bgasales.com/projects/trg-data-centers-infrastructure-cooling/

## VENUE

129.    Venue is proper in this District against Vertiv under 28 U.S.C. §§ 1391(a)-(d), or alternatively under 28 U.S.C. § 1400(b), including at least because Vertiv submitted to the venue of this Court by filing its Second Amended Complaint and litigating this case in this Distrct.

130.    Venue is also proper against both Vertiv and Vertiv's Customers in this District under 28 U.S.C. §§ 1391(a)-(d), or alternatively under § 1400(b), and *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1260-63 (Fed. Cir. 2022). Venue is appropriate against Vertiv's Customers in this District because each of Vertiv's Customers are subject to personal jurisdiction for the reasons described above.

## VERTIV'S PRODUCTS AND VERTIV CUSTOMERS

131.    Per Vertiv's representation, Vertiv's iCOM software is not modifiable or changeable and Vertiv's Customers can't do anything to it.

132.    Per Vertiv's representations, the Accused Vertiv Products and Accused Vertiv Methods do not work with the cooling equipment of any other supplier.

133.    On information and belief, as discussed in detail above, each of the Vertiv Customers has used the Accused Vertiv Products and Accused Vertiv Methods prior to expiration of the Counterclaim Patents.

134.    Each time Valtrus sends a letter or makes an infringement claim against Vertiv's Customers based on the use of Vertiv equipment, Vertiv owes its customers indemnity obligations for any resulting damages.

135.    Vertiv owes indemnity obligations to every Vertiv Customer of the Accused Vertiv Products.

## FIRST CLAIM (AGAINST VERTIV AND VERTIV CUSTOMERS)

### (Infringement of the '287 Patent by Vertiv Customers; Joint and Several Liability)

136.    Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint.

137.    The '287 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

138.    As explained above, Vertiv Customers have used the Accused Vertiv Products in connection with methods of cooling their data centers prior to expiration of the Counterclaim Patents. The Vertiv Customers have performed the Accused Vertiv Methods prior to expiration of the Counterclaim Patents. Vertiv has indicated that there is no variation between the Vertiv Customers' use of the Accused Vertiv Products and/or performance of the Accused Vertiv Methods.

139.    Each of the Vertiv Customers has directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '287 patent, by making and/or using the Accused Vertiv Products and Accused Vertiv Methods in their respective data centers for cooling such data centers. An exemplary claim chart demonstrating one way in which Vertiv Customers infringed claim 1 of the '287 Patent is attached as Exhibit 4.

140.    Vertiv is directly, and jointly and severally, liable to Valtrus for infringement by Vertiv Customers based on use of the Accused Vertiv Products. While Valtrus need not identify all legal bases for such liability, Valtrus contends that Vertiv is liable at least under theories of equitable and judicial estoppel; because Valtrus is a third party beneficiary of the indemnity contracts; and because Vertiv has assumed the liability of the Vertiv Customers.

## SECOND CLAIM (AGAINST VERTIV CUSTOMERS)

### (Infringement of the '287 Patent by Vertiv Customers)

141.    Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint.

142.    The '287 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

143.    On information and belief, Vertiv Customers have infringed the '287 Patent at least through use of the Accused Vertiv Products and the Accused Vertiv Methods, for example as shown in Exhibit 4, prior to expiration of the Counterclaim Patents. Vertiv Customers may have also infringed the '287 Patent through use of the Accused Non-Vertiv Products and Accused Non-Vertiv Methods, prior to expiration of the Counterclaim Patents. An exemplary claim chart reflecting such infringement is attached as Exhibit 5.

### THIRD CLAIM (AGAINST VERTIV AND VERTIV CUSTOMERS)

**(Infringement of the '179 Patent by Vertiv Customers; Joint and Several Liability)**

144.    Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint.

145.    The '179 Patent is generally directed to a partition for varying the supply of cooling fluid in a data center.

146.    As explained above, Vertiv Customers have used the Accused Vertiv Products in connection with methods of cooling their data centers prior to expiration of the Counterclaim Patents. The Vertiv Customers have performed the Accused Vertiv Methods prior to expiration of the Counterclaim Patents. Vertiv has indicated that there is no variation between the Vertiv Customers' use of the Accused Vertiv Products and/or performance of the Accused Vertiv Methods.

147.    Each of the Vertiv Customers has directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '179 patent, by making and/or using the Accused Vertiv Products and Accused Vertiv Methods in their respective data centers for cooling such data

centers. An exemplary claim chart demonstrating one way in which Vertiv Customers infringed claim 1 of the '179 Patent is attached as Exhibit 6.

148.    Vertiv is directly, and jointly and severally, liable to Valtrus for infringement by Vertiv Customers based on use of the Accused Vertiv Products. While Valtrus need not identify all legal bases for such liability, Valtrus contends that Vertiv is liable at least under theories of equitable and judicial estoppel; because Valtrus is a third party beneficiary of the indemnity contracts; and because Vertiv has assumed the liability of the Vertiv Customers.

## FOURTH CLAIM (AGAINST VERTIV CUSTOMERS)

### (Infringement of the '179 Patent by Vertiv Customers)

149.    Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint

150.    The '179 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

151.    On information and belief, Vertiv Customers have infringed the '179 Patent at least through use of the Accused Vertiv Products and the Accused Vertiv Methods, for example as shown in Exhibit 6, prior to expiration of the Counterclaim Patents. Vertiv Customers may have also infringed the '179 Patent through use of the Accused Non-Vertiv Products and Accused Non-Vertiv Methods, prior to expiration of the Counterclaim Patents. An exemplary claim chart reflecting such infringement is attached as Exhibit 7.

## FIFTH CLAIM (AGAINST VERTIV AND VERTIV CUSTOMERS[73])

### (Infringement of the '682 Patent by Vertiv Customers; Joint and Several Liability)

---

[73] This claim applies to all of Vertiv's Customers other than Equinix. Valtrus has already separately asserted infringement of the '682 Patent against Equinix. *Valtrus Innovations Ltd. v. Equinix, Inc.*, Case No. 2:25-00016 (E.D. Tex.).

152. Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint.

153. The '682 Patent is generally directed to a system and method for controlling temperature in a data center based on sensory data.

154. As explained above, Vertiv Customers have used the Accused Vertiv Products in connection with methods of cooling their data centers prior to expiration of the Counterclaim Patents. The Vertiv Customers have performed the Accused Vertiv Methods prior to expiration of the Counterclaim Patents. Vertiv has indicated that there is no variation between the Vertiv Customers' use of the Accused Vertiv Products and/or performance of the Accused Vertiv Methods.

155. Each of the Vertiv Customers has directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '682 patent, by making and/or using the Accused Vertiv Products and Accused Vertiv Methods in their respective data centers for cooling such data centers. An exemplary claim chart demonstrating one way in which Vertiv Customers infringed claim 1 of the '682 Patent is attached as Exhibit 8.

156. Vertiv is directly, and jointly and severally, liable to Valtrus for infringement by Vertiv Customers based on use of the Accused Vertiv Products. While Valtrus need not identify all legal bases for such liability, Valtrus contends that Vertiv is liable at least under theories of equitable and judicial estoppel; because Valtrus is a third party beneficiary of the indemnity contracts; and because Vertiv has assumed the liability of the Vertiv Customers.

### SIXTH CLAIM (AGAINST VERTIV CUSTOMERS[74])

### (Infringement of the '682 Patent by Vertiv Customers)

---

[74] This claim applies to all of Vertiv's Customers other than Equinix. Valtrus has already separately asserted infringement of the '682 Patent against Equinix. *Valtrus Innovations Ltd. v. Equinix, Inc.*, Case No. 2:25-00016 (E.D. Tex.).

157.    Valtrus re-alleges and incorporates herein by reference paragraphs 1-135 of the Complaint

158.    The '682 Patent is generally directed to a system and method for cooling a room configured to house a plurality of computer systems.

159.    On information and belief, Vertiv Customers have infringed the '682 Patent at least through use of the Accused Vertiv Products and the Accused Vertiv Methods, for example as shown in Exhibit 8, prior to expiration of the Counterclaim Patents. Vertiv Customers may have also infringed the '682 Patent through use of the Accused Non-Vertiv Products and Accused Non-Vertiv Methods, prior to expiration of the Counterclaim Patents. An exemplary claim chart reflecting such infringement is attached as Exhibit 9.

## **PRAYER FOR RELIEF**

WHEREFORE, Valtrus prays for judgment against Vertiv and Vertiv Customers jointly, severally, or in the alternative, as well as judgment against the Vertiv Customers for use of Accused Non-Vertiv Products, as follows:

A.  That each Vertiv Customer has infringed each of the Counterclaim Patents;

B.  That Vertiv is liable to Counterclaim-Plaintiffs for Vertiv Customers' infringement of each of the Counterclaim Patents based on use of the Accused Vertiv Products and/or performance of the Accused Vertiv Methods;

C.  That, if applicable, Vertiv's Customers are liable to Counterclaim-Plaintiffs for Vertiv Customers' infringement of each of the Counterclaim Patents based on use of the Accused Non-Vertiv Products and/or performance of the Accused Non-Vertiv Methods;

D.  That Vertiv and/or Vertiv's Customers, individually or through Counterclaim-Defendant Vertiv based on indemnity obligations, pay Counterclaim-Plaintiffs damages adequate to

compensate Counterclaim-Plaintiffs for Vertiv's Customers' past infringement of each of the Counterclaim Patents, together with interest and costs under 35 U.S.C. § 284;

E.  That Vertiv and/or Vertiv's Customers, individually or through Counterclaim-Defendant Vertiv based on indemnity obligations, pay prejudgment and post-judgment interest on the damages assessed;

F.  That Vertiv and/or Vertiv's Customers, individually or through Counterclaim-Defendant Vertiv based on indemnity obligations, pay Counterclaim-Plaintiffs enhanced damages pursuant to 35 U.S.C. § 284;

G.  That this is an exceptional case under 35 U.S.C. § 285; and that Vertiv and/or Vertiv's Customers, individually or through Counterclaim-Defendant Vertiv based on indemnity obligations, pay Counterclaim-Plaintiffs' attorneys' fees and costs in this action; and

H.  That Counterclaim-Plaintiffs be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Counterclaim-Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Date: September 25, 2025

Respectfully submitted,

*/s/ Eric H. Findlay*

Connor S. Houghton
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310
choughton@reichmanjorgensen.com

Matthew G. Berkowitz – LEAD ATTORNEY
Aaron Morris
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
amorris@reichmanjorgensen.com

Patrick Colsher
Sean M. McCarthy
Reichman Jorgensen Lehman & Feldberg
LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
pcolsher@reichmanjorgensen.com
smccarthy@reichmanjorgensen.com

Ariane S. Mann (TX Bar No. 24140399)
Reichman Jorgensen Lehman & Feldberg
LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701
Tel: (650) 623-1401
amann@reichmanjorgensen.com

Eric H. Findlay (TX Bar No. 00789886)
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: efindlay@findlaycraft.com

*Attorneys for Defendant/Counterclaim-Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on September 25, 2025.

*/s/ Eric H. Findlay*
Eric H. Findlay
