# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **Valtrus Innovations Ltd.** | § | **C.A. NO. 2:24-cv-00361-JRG-RSP** |
| Plaintiff, | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| **NTT Data Services, LLC et al** | § | |
| Defendant. | § | **LEAD CASE** |
| **Vertiv Corporation,** | § | **C.A NO. 2:24-cv-00907-JRG-RSP** |
| Plaintiff, | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| **Valtrus Innovations Ltd.,** | § | |
| Defendant. | § | |
| **Valtrus Innovations Ltd. and** | § | **C.A NO. 2:24-cv-00907-JRG-RSP** |
| **Key Patent Innovations Ltd.,** | § | |
| Counterclaim-Plaintiffs, | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| **Vertiv Corporation;** | § | |
| **11:11 Systems, Inc.;** | § | |
| **FifteenFortySeven Critical Systems** | § | |
| **Realty, LLC;** | § | |
| **365 Data Centers Holdings, LLC;** | § | |
| **CDW Corporation;** | § | |
| **Cogent Communications Holdings, Inc.;** | § | |
| **Cologix, Inc.;** | § | |
| **Compass Datacenters, LLC;** | § | |
| **Equinix, Inc.;** | § | |
| **EvoDC, LLC;** | § | |
| **FDC Servers.net, LLC;** | § | |
| **H5 Colo, Inc.;** | § | |
| **H5 Data Centers LLC;** | § | |
| **Iron Mountain Incorporated;** | § | |
| **Lumen Technologies, Inc.;** | § | |
| **McAllen Data Center, LLC;** | § | |
| **Netrality Properties, LP;** | § | |
| **NTT Global Data Centers Americas, Inc.;** | § | |
| **Prime Data Centers, LLC;** | § | |
| **Quasar Data Center, Ltd.;** | § | |
| **Sabey Corporation;** | § | |
| **Serverfarm, LLC;** | § | |
| **Strasmore, Inc.;** | § | |
| **T5 Data Centers, LLC;** | § | |
| **TRG Datacenters, LLC; and** | § | |
| **DOES 1-200;** | § | |
| Counterclaim-Defendants. | § | |

# OPPOSED MOTION FOR CONSOLIDATION WITH A DIFFERENT LEAD CASE, OR, ALTERNATIVELY, TO AMEND THE DOCKET CONTROL ORDER

## INTRODUCTION

Counterclaim-Plaintiffs Valtrus Innovations Ltd. and Key Patent Innovations Ltd. (collectively, "Valtrus") respectfully move to (i) consolidate this litigation with *Valtrus Innovations Ltd. et al. v. Equinix, Inc.*, 2:25-cv-00016-JRG ("*Equinix Case*"), or, alternatively, (ii) amend the Docket Control Order in this case to align with the Docket Control Order in the *Equinix Case*. Valtrus has conferred with Counterclaim-Defendant Vertiv Corporation ("Vertiv") who opposes the motion.[1]

The requested scheduling adjustments are necessary because of the complex procedural history of this case, as well as Vertiv's recent arguments and representations (including at a September 10, 2025 hearing). These factors effectively required Valtrus to file a counterclaim against both Vertiv and its customers, or otherwise risk preclusion or a time-bar under 35 U.S.C. § 286 in later cases against any infringing customers. Without the requested scheduling adjustments, Valtrus will have barely over one month to prove infringement, including on a newly-asserted patent and against dozens of new parties. This can be easily avoided without prejudice to Vertiv or any other new party if the Court consolidates this case with the *Equinix Case*, which involves an overlapping patent and concerns very similar issues.

\* \* \* \*

The patents in this case cover methods of cooling data centers. Vertiv does not own or operate data centers, but supplies cooling equipment to data center operators who infringe Valtrus'

---

[1] As set out below, Valtrus recently filed a Counterclaim against specific Vertiv Customers, along with Does 1-200 (defined as unknown Vertiv customers). Given that these customers are just now being served with the Counterclaim, and have not yet entered appearances, Valtrus has not been able to meet and confer with them about this motion.

1

patents by using the claimed cooling techniques. In May 2024, Vertiv filed a declaratory judgment complaint seeking to resolve questions of infringement by its customers. Vertiv claimed that, even though it does not itself operate data centers, it had standing because it had defense and indemnity obligations to its customers. For more than a year, Valtrus had pending motions to dismiss on subject matter jurisdiction grounds. But, each such motion was mooted as a result of court decisions and Vertiv's repeated amendments to its complaint. Most recently, on September 12, 2025, the Court granted Vertiv leave to file a Second Amended Complaint, which again mooted Valtrus' then-pending subject matter motion to dismiss.

Importantly, during briefing on Vertiv's motion for leave to file a Second Amended Complaint and at the September 10, 2025 hearing regarding that motion, Vertiv made statements and arguments that made it abundantly clear to Valtrus that it had no choice but to counterclaim against Vertiv and all its customers for the customers' infringement. Specifically, Vertiv told the Court that it believed Valtrus would be precluded, as a result of a ruling in this case, from ever asserting its patents in a later case against Vertiv customers. Vertiv also argued that its products were not "modifiable" or "changeable" (such that any infringement questions could be resolved in *this* litigation) and that Vertiv was the real party in interest for purposes of these cases. Finally, Vertiv asked the Court for Protective Order amendments that would effectively bar Valtrus from later suing its customers if the customers' identity was obtained through the discovery process in this litigation. As a result of Vertiv's various arguments and representations, Valtrus determined that it had no option but to respond to Vertiv's Second Amended Complaint with a counterclaim addressing all of Vertiv's customers' infringement in this case. Absent that, Vertiv and its customers would argue for preclusion in later suits or else simply run out the clock on the 6-year time-bar of Section 286 (given that many of Valtrus cooling patents are now expired).

Valtrus filed its counterclaim on September 25, 2025. This counterclaim addresses two of the patents that were already the subject of Vertiv's declaratory judgment complaint, and added a new third patent ("the '682 patent"). Valtrus' counterclaim also named more than two dozen Vertiv customers and Does 1-200 (defined as currently unknown Vertiv customers).

As a result of this unusual procedural history, Valtrus respectfully requests that the Court adjust the schedule to give Valtrus time to prove its new infringement claims, either through consolidation with the *Equinix Case*, or simply with a scheduling adjustment in this case to align with the *Equinix Case*. Consolidation with the *Equinix Case* would be the most efficient; Equinix is also a Vertiv customer and is already being accused of infringing various Valtrus patents, including the '682 Patent. Consolidation could also allow the Court to cancel the upcoming October 14 *Markman* hearing in this litigation and instead combine it with the *Markman* in the *Equinix Case*. Moreover, the requested extension is relatively modest—approximately five months—and would align this case with another case involving the same Plaintiffs, an overlapping defendant, and very similar issues. Vertiv would suffer no prejudice, and, in fact, previously represented to the Court that it would "work with" Valtrus on scheduling should the Court grant it leave to file a Second Amended Complaint (which the Court did). It is now opposing. For these reasons, and those set out further below, Valtrus respectfully requests that the Court afford it the opportunity to prove its case, and adjust the schedule as set forth herein.

## BACKGROUND AND PROCEDURAL HISTORY

This case began as a Declaratory Judgment action that Vertiv filed against Valtrus Innovations Ltd. in the Northern District of Texas ("Northern District") on May 14, 2024. On October 15, 2024, the Northern District transferred the case to this Court and it was assigned Case Number 2:24-cv-00907 ("Vertiv Member Case"). This Court then consolidated this case for pre-

3

trial purposes with *Valtrus Innovations Ltd. v. NTT Data Services, LLC et al.*, 2:24-cv-00361 ("NTT Lead Case"), which had previously been set for jury trial on April 6, 2026 and had a pre-existing Docket Control Order. *NTT Lead Case*, Dkt. 60; *Vertiv Member Case* Dkt. 42.

From the very beginning of the litigation, Valtrus sought to dismiss this case on subject matter jurisdiction grounds. It first moved in the Northern District, but that was mooted when that court transferred the case here without ruling on the subject matter jurisdiction question.[2] Valtrus then re-filed its motion in this Court on November 15, 2024. *NTT Lead Case*, Dkt. No. 81. That motion was mooted on July 25, 2025 when Vertiv filed its First Amended Complaint. *See id.*, Dkt. No. 118. Valtrus immediately re-filed, *see id.* Dkt. 121, but that re-filed motion was again mooted when the Court granted Vertiv leave to file a Second Amended Complaint. *Id.* Dkt. 143.

In the interim, Valtrus realized that, in view of Vertiv's various statements and arguments made in briefing and at the September 10, 2025 hearing (on Vertiv's motion for leave and in connection with two pending discovery motions), it had no choice but to counterclaim against Vertiv and its customers. The following arguments by Vertiv are representative:

- At the September 10 hearing, the Court asked Vertiv whether it was "disputing [Valtrus'] argument that you would contend that the judgment in this case would be applicable to any suit against other customers of yours regarding these patents." Vertiv responded, "there very well may be preclusive effect of that down the road." 9/10/25 Hearing Tr. 13-14.

- At the September 10 hearing, Vertiv stated that Valtrus has "sued our RPIs [real parties in interest]." *Id.* at 63. This was a reversal from prior statements Vertiv had made to the Patent Office in connection with IPRs, where it identified itself as

---

[2] Valtrus moved to dismiss in the Northern District case on subject matter jurisdiction grounds, but the Court there elected to transfer the case without reaching those issues.

4

the only RPI, and specifically disputed that its customers were RPIs. Exh. A (an excerpt from one of Vertiv's IPR petitions), Exh. B (Discretionary Denial Paper) ("Petitioner's indemnification obligations do not show that Petitioner filed its petition as a representative or at the behest of the *DataBank* Action defendants (or any other threatened customer."). *See* Dkt. 123-1 at 28-32; *see also* Dkt. 134 at 1-2.

- At the September 10 hearing, Valtrus stated that its products are not "modifiable" and not "changeable" and that "the customers can't do anything about it." 9/10/25 Hearing Tr. at 13.

- In opposing one of Valtrus' motions to dismiss, Vertiv stated that "the lawsuits against Vertiv's individual customers do not provide a forum for more broadly addressing Valtrus' campaign directed to at least the customers receiving Valtrus' demand letters or subject to suit after the filing of this declaratory judgment action." Dkt. 87 at 5.

- In response to Valtrus' most recent motion to dismiss, Vertiv stated that "This litigation represents the battlefield on which the larger fight is being fought and is the most efficient venue to address the issues at stake." Dkt. 138 at 2.

Following all of this, Valtrus elected not to re-file its motion to dismiss on subject matter jurisdiction grounds. Instead, given Vertiv's statements about (i) preclusion; (ii) its customer RPIs; (iii) the fact that its products are not modifiable; (iv) barring Valtrus from later suing its customers identified during discovery; and (v) how litigation in this case would be most efficient, Valtrus responded to Vertiv's Second Amended Complaint by counterclaiming against Vertiv and all of its customers. Dkt. 151. Valtrus' Counterclaim named more than two dozen specific Vertiv

5

customers, as well as Does 1-200 (to address additional currently unknown Vertiv customers). *Id.* Valtrus is currently in the process of serving these additional Counterclaim-Defendants.

The current schedule, which was originally set based on a case filed against NTT Data Services that has long since been dismissed, provides in relevant part as follows:

| Current Case (Dkt. 122) | Event |
|---|---|
| April 6, 2026 | Jury Selection |
| March 5, 2026 | Pretrial Conference |
| January 23, 2026 | Response to Dispositive Motions |
| January 9, 2026 | Dispositive Motions |
| December 22, 2025 | Close of Expert Discovery |
| November 5, 2025 | Close of Fact Discovery |
| October 14, 2025 | Claim Construction Hearing |

The *Equinix Case* has many similarities to the current case but is on a schedule that is approximately 5 months behind this one. *Equinix Case*, Dkt. 21. The *Equinix Case* involves overlapping parties (Equinix is a Vertiv customer and was added to the current case via Valtrus' Counterclaim), similar issues (in terms of the types of technology involved), and now involves an overlapping patent—the '682 patent. The *Markman* hearing in the *Equinix Case* is set for March 10, 2026. *Equinix Case*. *Id*. Fact discovery closes on April 27, 2026 and expert discovery closes on June 1, 2026. *Id.* Jury selection is set for September 14, 2026. *Id.*

# ARGUMENT

I. **There is Good Cause to Consolidate this Litigation with the *Equinix Case* or to Amend the Schedule in View of Valtrus' Counterclaim and the Various New Issues and Parties Implicated as a Result.**

The current schedule is no longer practical in view of how the pleadings have developed. With Valtrus' Counterclaim, there are numerous new issues, including (i) assertion of a brand-new patent, and (ii) at least two dozen new parties who have not yet had a chance to even respond to the Counterclaim, let alone provide any discovery in this case. There is no realistic way that the parties can address these new issues with a close of fact discovery by November 5 and close of expert discovery by December 22.

Moreover, this was not a foreseeable situation for Valtrus at the beginning of the case. Valtrus moved multiple times to dismiss the case on subject matter jurisdiction grounds. Those motions were mooted three different times and were collectively pending for more than a year without a merits ruling. Further, it did not become clear until recent months, culminating with the September 10 hearing, that Vertiv and its customers were planning to use this declaratory judgment case as a vehicle to assert preclusion down the road, all while preventing Valtrus from ever seeking a remedy against the full list of infringers (i.e., Vertiv's customers). *See* 9/10/25 Hearing Tr. at 17 (Vertiv articulating its concern about disclosing its list of customers for fear of litigation against them). In view of Vertiv's recent statements, including that its products are not modifiable and that its customers are real-parties-in-interest (which was a reversal from Vertiv's prior positions in IPR proceedings), Valtrus was left with no choice but to counterclaim against Veritv and all of its customers for the customers' infringement (or else never resolve those claims as a practical matter, given the preclusion risks and the expired nature of the patents).

Consolidation or schedule alignment of this case with the *Equinix Case* will give Valtrus sufficient time to address these new infringement issues, and would also give Vertiv's customers

7

(none of whom have even yet responded to the Counterclaim) sufficient time to respond, present their defenses and provide discovery.[3] Relevant dates in that case compared to the current schedule are as follows:

| Current Case (Dkt. 122) | *Equinix Case* (Dkt. 21) | Event |
|---|---|---|
| April 6, 2026 | September 14, 2026 | Jury Selection |
| March 5, 2026 | August 10, 2026 | Pretrial Conference |
| January 23, 2026 | June 22, 2026 | Response to Dispositive Motions |
| January 9, 2026 | June 8, 2026 | Dispositive Motions |
| December 22, 2025 | June 1, 2026 | Close of Expert Discovery |
| November 5, 2025 | April 27, 2026 | Close of Fact Discovery |
| October 14, 2025 | March 10, 2026 | *Markman* Hearing |

Accordingly, there is good cause to adjust the schedule and either consolidate this case with the *Equinix Case* or align the current case schedule to match it, as set forth *Equinix Case*, Docket No. 21.

**II.  Neither Vertiv Nor its Customers Would Suffer Any Prejudice from Consolidation with the *Equinix Case***

Neither Vertiv nor its customers will be prejudiced by an amended schedule.

Vertiv previously indicated its willingness to be flexible on scheduling issues. For example, Vertiv suggested at the September 10 hearing that the Court could move the *Markman*

---

[3] Vertiv and Valtrus have not yet been able to confer with the new Counterclaim-Defendant Vertiv customers about this motion or the schedule. Granting this requested relief will give those parties sufficient opportunity to comment further on the schedule and whether any additional changes are needed (including, for example, to the P.R. 4-1 through P..R. 4-3 dates, which begin on November 4, 2025).

8

hearing to December 18 to align with different data center litigations against TierPoint and DataBank (identified in Section III below) and otherwise stated, as a reason why the Court should grant it leave to file a Second Amended Complaint that "if they need more time, Your Honor, we're willing to work with them on that." 9/10/25 Hearing Tr. 83. This statement is a clear indication that Vertiv is not going to be prejudiced by a modest delay. It has reneged on its scheduling representation now that Valtrus has filed a Counterclaim, but that can only be because it wants to rush to the close of fact discovery before Valtrus can prove its case, and not because of any actual prejudice. Indeed, other than Valtrus filing its Counterclaim, nothing has changed in the case since Vertiv told the Court it would work with Valtrus on scheduling issues; all of the other issues that led Vertiv to make this representation, including those arising out of Vertiv's Second Amended Complaint, are still part of the case. Moreover, Vertiv is the DJ plaintiff here—there is no reason that it needs to rush to trial on expired patents where only money damages are at issue.

Vertiv's customers also will not be prejudiced. To the contrary, they are brand new to this case and, absent an extension, will have no time to take any discovery. It is also worth noting that Valtrus has offered to sever and stay the case against the customers upon a few conditions, most notably if Vertiv agrees to take responsibility for all of its customers' liability (since it is supposedly indemnifying them and that is Vertiv's basis for being in federal court).[4] An extension

---

[4] Specifically, Valtrus offered to stay the case against Vertiv's customers if:
- 1) Vertiv agrees that all accused Vertiv products are used by all of its customers in the manner provided by Vertiv without modification and for their intended use; and
- 2) Vertiv identifies all of its customers such that Valtrus can substitute them in as parties for the Does; and
- 3) The customers agree to provide the minimal discovery relating to damages issues that Valtrus has requested; and

9

would give the parties an opportunity to work out that potential customer-based stay and could alleviate the need for the customers to immediately participate in the case in any significant manner.

### III. The Requested Relief is Likely to Streamline the Issues for the Court's Resolution.

As it stands now, there are four separate proceedings pending in this Court with overlapping patents asserted by the same Plaintiffs. The table below outlines the currently pending cases and the patents asserted in each.

| Patent | This Case (2:24-cv-361) | *Equinix Case* (2:25-cv-16) | TierPoint and DataBank (2:24-cv-777, 2:24-cv-776) | TierPoint (2:25-cv-323) |
|---|---|---|---|---|
| 6,862,179 | X |  | X |  |
| 6,718,277 | X |  | X |  |
| 6,854,287 | X |  | X |  |
| 7,031,870 | X |  | X |  |
| 6,868,682 | X | X | X |  |
| 6,854,284 |  | X | X |  |
| 6,868,683 |  | X | X |  |
| 7,939,967 |  | X |  | X |
| 7,057,509 |  |  |  | X |
| 9,310,855 |  |  |  | X |

Consolidation with the *Equinix Case* will allow the Court to combine two *Markman* hearings that involve one overlapping patent (the '682 patent).[5] It will also likely streamline many

---

- o  4)(a) Vertiv takes responsibility for any damages owed by the customers, such that Valtrus can address all damages for infringing use of Vertiv products in a single case; or
- o  4)(b); Vertiv's customers agree to be bound by the liability finding in this case and submit to the jurisdiction and venue of the Eastern District of Texas (which can be on a customer-by-customer basis if needed).

[5] Valtrus also intends to meet and confer with Vertiv, TierPoint and Databank regarding a similar motion that would consolidate the Databank and TierPoint cases into the *Equinix Case*.

10

of the discovery disputes across these cases, considering that Vertiv is involved in both cases as a supplier of equipment involved in the infringement disputes. Other suppliers of Accused Products (i.e., those used by Vertiv Customers who multi-source their equipment) may yet be similarly situated.

## CONCLUSION

For the foregoing reasons, Valtrus respectfully requests consolidation of this matter with the *Equinix Case*, or, alternatively, an Order directing the parties to submit a proposed Docket Control Order with dates essentially matching those in Docket No. 21 in the *Equinix Case*.

Dated: October 3, 2025

Respectfully submitted,

/s/ Eric H. Findlay
Matthew G. Berkowitz
Aaron Morris
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Fax: (650) 560-3501
Tel.: (650) 623-1401
mberkowitz@reichmanjorgensen.com

Connor S. Houghton
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Fax: (650) 560-3501
Tel.: (202) 894-7310
chouhgton@reichmanjorgensen.com

Patrick Colsher
Sean M. McCarthy
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Fax: (650) 560-3501
Tel.: (212) 381-1965
pcolsher@reichmanjorgensen.com

Ariane S. Mann
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701
Fax: (650) 560-3501
Tel.: (650) 623-1401
amann@reichmanjorgensen.com

Eric H. Findlay (TX Bar No. 00789886)
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Tel: (903) 534-1100

0

Fax: (903) 534-1137
Email: efindlay@findlaycraft.com

*Attorneys for Valtrus Innovations Ltd. and Key Patent Innovations Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of record.

/s/ *Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that the foregoing motion is opposed by Vertiv Corporation.

/s/ *Eric H. Findlay*
Eric H. Findlay

1